# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

JAMES BARNEY HUBBARD, ]
                     ]
    Petitioner,      ]
                     ]
vs.                  ]   CV-94-N-2639-W
                     ]
MORRIS THIGPEN, Commissioner of the ]
Alabama Department of Corrections, ]
                     ]
    Respondent.      ]

## MEMORANDUM OPINION

Petitioner James Barney Hubbard seeks habeas corpus relief from his murder conviction and sentence in the Circuit Court of Tuscaloosa County, Alabama. The court presently has for consideration Mr. Hubbard's motions for an evidentiary hearing, the appointment of expert witnesses, and for appointment of an investigator. For the reasons set forth below, the motions are due to be denied in all respects.

## I.   MOTION FOR EVIDENTIARY HEARING

The petitioner has requested that the court conduct an evidentiary hearing on the claims contained in his habeas corpus petition.[1] He asserts that the court must grant this

---

[1] Petitioner's current counsel specifically stated at the Rule 20 hearing that no additional testimony was needed as to the claim that petitioner received ineffective assistance of counsel in relation to his 1957 conviction. The court therefore assumes that petitioner does not need a hearing on this claim. (Rule 20 Transcript at 6).

request due to the alleged insufficiency of the record and of the state court review of the proceedings.[2]

In Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963), the court held that an evidentiary hearing must be held on habeas claims where

1. the merits of the factual dispute were not resolved in the state hearing;

2. the state factual determination is not fairly supported by the record as a whole;

3. the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

4. there is a substantial allegation of newly discovered evidence;

5. the material facts were not adequately developed at the state court hearing; or

6. for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

Townsend, 372 U.S. at 313. The Eleventh Circuit has stated that "[a]n evidentiary hearing is necessary whenever a habeas petition alleges facts that, if true, establish his or her right to relief." Agan v. Dugger, 835 F.2d 1337, 1338 (11th Cir. 1987), cert. denied, 487 U.S. 1205, 108 S. Ct. 2846, 101 L. Ed. 2d 884 (1988). A habeas petitioner

> bears the burden of demonstrating facts sufficient to warrant an evidentiary hearing. Raulerson v. Wainwright, 732 F.2d 803, 813 (11th Cir.), cert. denied, 469 U.S. 966, 105 S. Ct. 366, 83 L. Ed. 2d 302 (1984). A court is not required

---

[2] In April of 1996, President Clinton signed into law the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which greatly narrows the circumstances in which a petitioner proceeding under 28 U.S.C. § 2254 is entitled to an evidentiary hearing. Because the petitioner is not entitled to an evidentiary hearing under the less stringent pre-AEDPA standards, we do not address the applicability of the AEDPA to this case. The court does note, however, that the Court of Appeals for the Eleventh Circuit has held that some provisions of the AEDPA are to be applied retroactively. *See, Hunter v. United States*, 101 F.3d 1565 (11th Cir. 1996).

> to "blindly accept speculative and inconcrete claims" as a basis upon which a hearing will be ordered. Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (citations omitted).

McLeod v. Dugger, 735 F. Supp. 1011, 1014 (M.D. Fla. 1990).

### A. Procedurally Defaulted Claims

The petitioner is not entitled to an evidentiary hearing on the merits of any habeas claim he has procedurally defaulted unless he can first overcome the procedural bar. Hill v. Jones, 81 F.3d 1015, 1023 (11th Cir. 1996), cert. denied, -- U.S. --, 117 S. Ct. 967 (1997). This means he must show either (1) cause for failing to develop in state court proceedings the facts supporting his claim, and prejudice resulting from that failure, or (2) that the failure to hold a federal evidentiary hearing would result in a fundamental miscarriage of justice.[3] Id., citing Keeney v. Tamayo-Reyes, 504 U.S. 1, 11-12, 112 S. Ct. 1715, 1721, 118 L. Ed. 2d 318 (1992); Weeks v. Jones, 26 F.3d 1030, 1043 (11th Cir. 1994), cert. denied, -- U.S. --, 115 S. Ct. 1258, 131 L. Ed. 2d 137 (1995).

It appears that this court is barred by the procedural default doctrine from considering the merits of those claims listed as C, D, E.1, F.3 (in part)[4], F.7, G.1, I, J, K, L by

---

[3] To show that a fundamental miscarriage of justice would result from a failure to hold an evidentiary hearing, the petitioner must make a showing of "actual innocence" as to the crime or as to his eligibility for the death penalty. In the guilt context, such a showing requires him "to support his allegations of constitutional error with new reliable evidence-- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence--that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808, 834 (1995). The petitioner has made no such showing. Neither has he shown that but for a constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty under state law." Sawyer v. Whitley, 505 U.S. 333, 346-48, 112 S. Ct. 2514, 2522-23, 120 L. Ed. 2d 269 (1992). With a murder conviction less than twenty years before the murder giving rise to this case, the petitioner was clearly eligible for the death penalty. He has made no showing of mitigation so compelling as to meet this standard.

[4] This is a claim that trial counsel failed to procure a state-funded psychiatric expert to support the petitioner's defense "by substantiating the arguments contained in [the petitioner's] motion to suppress and providing evidence of mitigation at sentencing." Petition for Writ of Habeas Corpus at ¶ 93. Insofar as this claim is related to mitigation at sentencing, it is procedurally defaulted for failure to raise it in state court.

3

the procedural default doctrine. It also appears that the petitioner has failed to show cause and prejudice or a fundamental miscarriage of justice so as to circumvent the procedural bar on any of the defaulted claims.

The petitioner asserts, however, that he needs an evidentiary hearing to determine "whether cause exists due to trial counsel's ineffectiveness in failing to object or otherwise preserve an issue for review. . . ." Petitioner's Motion for an Evidentiary Hearing and Memorandum in Support at 13. "A petitioner is not entitled to a hearing on the threshold issues of cause and prejudice or manifest injustice without first proffering specific facts which support a finding that one of these exceptions to the procedural default rule exists." Hill, 81 F.3d at 1023.

The petitioner has not offered specific facts in support of his Motion for an Evidentiary Hearing to show that ineffective assistance caused his procedural defaults. In reviewing the petition, the court notes that three of the petitioner's ineffective assistance claims which were not defaulted, F.9 (failure to object to malice instruction), G.4 (failure to object to mandatory death sentence instruction), and F.2.c (failure to object to police failure to administer an intoximeter test), could be construed as cause for the default of claims C (impropriety of malice instruction), D (impropriety of mandatory sentencing instruction), and I (impropriety of police failure to administer intoximeter test), respectively. Even as to these claims, however, the court is not inclined to grant the petitioner's request for an evidentiary hearing because he was afforded a full and fair opportunity to develop any such facts during the state court proceedings on his petition for post-conviction relief

under Ala. R. Crim. P. 20.[5] The petitioner's Rule 20 counsel extensively examined both of the petitioner's trial attorneys during the Rule 20 proceedings. Those examinations are included in the record and include testimony relating to the claims set forth above. To the extent that the petitioner failed to develop other material facts relating to these claims, he has not shown cause for this failure and is not entitled to an evidentiary hearing in federal court.

### B. Other Claims Not to be Considered on the Merits

It appears that this court is precluded from considering the merits of claim Q under the doctrine enunciated in Stone v. Powell, 428 U.S. 465, 468-69, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), which states that federal habeas review is not available on a state prisoner's claim that his conviction rests on evidence obtained through an unconstitutional search or seizure if the state has previously given him an opportunity for full and fair litigation of the claim. The court need not grant an evidentiary hearing on those claims which are not to be considered on the merits.

The respondent also claims that this court is precluded from considering the merits of claims G.3 and H because they are stated in conclusory fashion, without the requisite specificity, factual support and record references to sustain such claims. Although the court concludes that such claims may be sufficiently pled, no evidentiary hearing is warranted as to those claims and other claims not procedurally barred for the reasons set forth below.

---

[5] The petitioner filed his petition for post-conviction relief in state court pursuant to Rule 20 of the Alabama (Temporary) Rules of Criminal Procedure. That provision was enacted as a temporary rule effective April 1, 1987, but was later codified in as Ala. R. Crim. P. 32.

5

## C.  Claims Not Procedurally Defaulted

The petitioner argues that this court should use its discretionary authority to hold an evidentiary hearing on his claims. The court is not inclined to grant this request. The Rule 20 court held a hearing at which the petitioner was given an opportunity to and did present evidence in support of his claims. At the hearing, the petitioner's current counsel stated that there were certain issues as to which the record would "speak for itself," and upon which no further testimony would be helpful. Rule 20 transcript at 62-63. The issues were extensively briefed by the petitioner. In his brief, the petitioner did not set forth the need for factual development other than to say that he would "further develop the facts regarding counsel's errors, through testimony at the hearing on this Petition." Rule 20 Transcript at 221. Although the Rule 20 court refused the petitioner's request for expert assistance, it accepted an offer of proof on the expected testimony of the petitioner's proposed experts.[6] The parties each submitted proposed findings of fact and conclusions of law. The record thus appears to provide a sufficient basis upon which to decide the issues.

The petitioner also argues, however, that he is entitled to an evidentiary hearing because the state court allegedly employed a fact-finding procedure insufficient to afford him a full and fair hearing. In particular, he complains that (1) the state trial court failed to adequately resolve factual questions when it adopted the state's proposed findings of fact and conclusions of law in its ruling on the petitioner's Rule 20 petition, and (2) the court's refusal to grant him funds for expert and investigative assistance prevented him from

---

[6]The petitioner was not entitled to any state-funded expert assistance or even to the assistance of counsel during the Rule 20 proceedings, as is explained below.

6

developing the material facts and rendered the Rule 20 court's fact-finding procedures inadequate.

### 1. Adoption of Proposed Opinion by the State Court

The petitioner complains that the Rule 20 court did not consider his claims; that it simply adopted wholesale the state's proposed findings of fact and conclusions of law. Although the Supreme Court has criticized the judicial practice of adopting one party's proposed findings of fact, it has refused to reject such findings as a matter of course. The Court has said:

> We, too, have criticized courts for their verbatim adoption of findings of fact prepared by prevailing parties, particularly when those findings have taken the form of conclusory statements unsupported by citation to the record. See, e.g., United States v. El Paso Natural Gas Co., 376 U.S. 651, 656-657, 84 S. Ct. 1044, 1047-1048, 12 L. Ed. 2d 12 (1964); United States v. Marine Bancorporation, 418 U.S. 602, 615, n. 13, 94 S. Ct. 2856, 2866, n. 13, 41 L. Ed. 2d 978 (1974). We are also aware of the potential for overreaching and exaggeration on the part of attorneys preparing findings of fact when they have already been informed that the judge has decided in their favor. See J. Wright, The Nonjury Trial--Preparing Findings of Fact, Conclusions of Law, and Opinions, Seminars for Newly Appointed United States District Judges 159, 166 (1962). Nonetheless, our previous discussions of the subject suggest that even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous. United States v. Marine Bancorporation, supra, at 615, n. 13, 94 S. Ct., at 2866, n. 13; United States v. El Paso Natural Gas Co., supra, 376 U.S., at 656-657, 84 S. Ct., at 1047-1048.

Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 572, 105 S. Ct. 1504, 1510-11, 84 L. Ed. 2d 518 (1985). Because the trial court in Anderson had provided guidance to the party submitting the findings, had allowed the other party time to respond and had changed the proposed findings to some extent before adopting them, the Court found "no reason to doubt that the findings issued by the [trial court] represent the judge's own

7

considered conclusions." <u>Anderson</u>, 470 U.S. at 572-73. The court then concluded that "[t]here is no reason to subject those findings to a more stringent appellate review than is called for by the applicable rules." <u>Id</u>. at 573.

Although <u>Anderson</u> is not a habeas case and the findings of fact reviewed were those of a federal district court, not a state court, it instructs that findings of fact proposed by a party and adopted by a court are not to be rejected on that basis, or even to be subjected to a different standard of review, unless there is "reason to doubt that the findings issued by the [trial] court represent the judge's own considered conclusions." <u>Anderson</u>, 470 U.S. at 573.

The Eleventh Circuit has also criticized the practice of allowing a party to "ghostwrite" orders, but has stated that "such orders will be vacated only if a party can demonstrate that the process by which the judge arrived at them was 'fundamentally unfair.'" <u>In re Dixie Broadcasting</u>, 871 F.2d 1023, 1030 (11th Cir.), <u>cert. denied</u>, 493 U.S. 853, 110 S. Ct. 154, 107 L. Ed. 2d 112 (1989). In refusing to vacate one such order, the Eleventh Circuit cited several reasons, including the fact that the court had requested a draft order in the presence of all counsel and the parties had ample opportunity to argue their case through briefs and oral argument. <u>Id</u>. at 1030. <u>See also</u> <u>McBride v. Sharpe</u>, 25 F.3d 962, 971 at n. 12 (11th Cir.), <u>cert. denied</u>, -- U.S.--, 115 S. Ct., 130 L. Ed. 2d 401 (1994) (court rejected petitioner's contention that state habeas court's fact-finding procedure was inadequate simply because that court had adopted a proposed order drafted by the state).

In this case, there is no reason to doubt that the opinion of the Rule 20 court did not represent the judge's "own considered conclusions" or that the process by which he

8

arrived at that order was "fundamentally unfair." The parties had ample opportunity to present their arguments in briefs and oral argument. The judge openly solicited and received from each party proposed findings and conclusions. The findings, as adopted, are not conclusory and are based upon record evidence. Also, while the Rule 20 opinion is very similar to the state's proposed findings of fact and conclusions of law, there are differences indicating the court reviewed, considered and made changes to the proposed findings and conclusions before adopting them.[7] This indicates that the Rule 20 court did not take the proposed findings and conclusions at face value. This court is inclined to believe the assertions of the Rule 20 court to the effect that it "spent two full days fashioning it's [sic] own order." Rule 20 Supplemental Transcript at 65. It appears that the opinion represents the Rule 20 court's actual conclusions.

The court will therefore decline to treat the opinion of the Rule 20 court any differently than it would the opinion of a court that did not adopt the proposed findings and conclusions of the prevailing party. Neither will the court view the opinion as proof that the Rule 20 court failed to adequately resolve factual questions simply because that court adopted many of the state's proposed findings of fact and conclusions of law. This court will apply the presumption of correctness to the findings of the Rule 20 court unless the

---

[7]Even a cursory comparison of the Rule 20 opinion to the state's proposed findings reveals differences. For example, omitted from the opinion is a discussion of the merits of an issue, compare Hubbard, 584 So. 2d at 908 and Rule 20 Supplemental Transcript at 39, as well as a discussion of a legal issue. Compare Hubbard, 584 So. 2d at 901-02 and Rule 20 Supplemental Transcript at 13-18. In several instances, the Rule 20 court deleted statements that the petitioner had presented "no evidence" as to certain issues. Compare Hubbard, 584 So. 2d at 908-09 and Rule 20 Supplemental Transcript at 41-42, 44.

petitioner can otherwise show why it should not, and no evidentiary hearing will be held as a result of these arguments.

2. **The State Court's Refusal to Provide Petitioner with Expert and Investigative Assistance**

The petitioner asserts that he is entitled to an evidentiary hearing because the Rule 20 court refused to provide him with expert and investigative assistance. He argues that the lack of such assistance prevented him from developing the material facts and rendered the Rule 20 fact-finding procedures inadequate to afford him a fair hearing.

In order to gain an evidentiary hearing for failure to develop the material facts, the petitioner must show cause and prejudice for his failure to develop the facts in the Rule 20 proceedings or that a fundamental miscarriage of justice would result from failure to hold a hearing[8]. Keeney v. Tamayo-Reves, 504 U.S. 1, 11-12, 112 S. Ct. 1715, 1721, 118 L. Ed. 2d 318 (1992). To show cause, the petitioner points to the Rule 20 court's refusal to provide him with expert assistance. He argues that the lack of expert testimony from a psychiatrist hindered him from developing facts regarding his claims that trial counsel rendered ineffective assistance by failing to introduce evidence of his alcoholism and low intelligence. He also argues that he needed toxicology and police experts to establish that his signature on the statement was involuntary and that the police engaged in misconduct by allowing him to drink alcohol after he gave the statement. He also complains that the Rule 20 court denied his request for a ballistics expert, but does not state precisely how this prejudiced him.

---

[8] As set forth above, it does not appear that any miscarriage of justice would result from the failure to hold a hearing.

The petitioner seems to assume that the state had a constitutional obligation to provide him with such expert assistance during the Rule 20 proceedings. In Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), the Supreme Court held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." 470 U.S. at 74.[9] Ake does not apply in the post-conviction context, however, so the petitioner was not constitutionally entitled to state-appointed expert witnesses during his Rule 20 proceedings. Deputy v. Taylor, 1993 W.L. 643368 at * 4-5 (D. Del. 1993), affirmed, 19 F.3d 1485 (3d Cir.), cert. denied sub nom, Stanley v. Taylor, 512 U.S. 1230, 114 S. Ct. 2730, (1994).[10] The state therefore had no constitutional obligation to provide the petitioner with expert assistance during the Rule 20 proceedings.

Because the petitioner had no right to post-conviction expert assistance, the denial of his request for such assistance cannot serve as "cause." Analogous cases hold that the errors of post-conviction counsel cannot be "cause" for the procedural default of a habeas claim, since petitioners do not have the right to any counsel at all during post-conviction proceedings. In Coleman v. Thompson, 501 U.S. 722, 752-54, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991), the court reasoned that, because the state has no obligation to provide

---

[9] Neither the Supreme Court nor the Eleventh Circuit has extended Ake to require non-psychiatric expert assistance for indigent defendants. Baxter v. Thomas, 45 F.3d 1501, 1511 at n. 24 (11th Cir.), cert. denied, -- U.S. --, 116 S. Ct. 385, 133 L. Ed. 2d 307 (1995) Consequently, the state's failure to provide non-psychiatric expert assistance, at any stage of the proceedings, would most likely not constitute "cause" for failure to develop material facts.

[10] A defendant in a state post-conviction proceeding is not even entitled to state-appointed counsel, Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990, 1993, 95 L. Ed. 2d 539, 545-46 (1987), whether or not he is sentenced to death. Murray v. Giarratano, 492 U.S. 1, 109 S. Ct. 2765, 106 L. Ed. 2d 1 (1989).

11

counsel to petitioners during the post-conviction stage, the petitioner must bear the risk of post-conviction attorney error resulting in procedural default. This is true even if the petitioner had no opportunity to raise the claim before. Hill, 81 F.3d 1015, 1025 (11th Cir. 1996), cert. denied, -- U.S. --, 117 S. Ct. 967 (1997) ("a petitioner may not rely on his collateral counsel's ineffectiveness to excuse the procedural default of a claim even when the state collateral proceeding was the petitioner's first opportunity to raise the claim.")

Application of these principles to this context reveals that the state's failure to provide the petitioner with expert assistance during the Rule 20 proceedings cannot serve as cause for his failure to develop material facts during those proceedings. The petitioner is therefore not entitled to an evidentiary hearing due to his failure to develop material facts during the Rule 20 proceedings.

It also does not appear that the Rule 20 court's failure to provide expert assistance to the petitioner rendered the fact-finding procedures inadequate to afford the petitioner a full and fair hearing. The petitioner did not make a clear showing of need for such assistance to the Rule 20 court, and the court accepted an offer of proof as to the proposed expert assistance. The Rule 20 court allowed for significant fact-finding at a hearing and in a separate deposition of one of the petitioner's trial attorneys. The Rule 20 transcript, in conjunction with the entire case record, provides an adequate basis upon which this court can resolve the claims in the petition.

### C. Other Arguments

Petitioner briefly asserts that he is also entitled to an evidentiary hearing to determine "whether the default rules invoked against the Petitioner by the State are

regularly followed and consistently applied in such a way as to bar federal review. . . ." Petitioner's Motion for an Evidentiary Hearing and Memorandum in Support at 13. The "default rules" to which petitioner apparently refers are currently reflected in Ala. R. Crim. P. 32.2(a).[11] The petitioner fails to specify why he thinks these rules are not regularly followed or consistently applied. He apparently intends to allege that Rule 32.2(a) is not an "adequate and independent" bar to relief. Because he fails to allege any factual basis for such a conclusion, he is not entitled to an evidentiary hearing on this issue.

The petitioner also argues that he is entitled to an evidentiary hearing to determine "whether issues were in fact considered by Alabama courts on the merits at trial and on appeal." Petitioner's Motion for an Evidentiary Hearing and Memorandum in Support at 13. It is unclear what the petitioner means by this statement. Further, he does not specify what facts an evidentiary hearing would allow him to determine.

In addition, the petitioner claims that his petition raises mixed questions of law and fact, and that <u>Thompson v. Keohane</u>, -- U.S. --, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995) therefore requires this court to conduct an independent evaluation of his claims. The court believes that it can conduct any necessary independent evaluation by reviewing the record.

---

[11] Rule 32.2(a) states that
A petitioner will not be given relief under this rule based upon any ground:
(1) Which may still be raised on direct appeal under the Alabama Rules of Appellate Procedure or by post-trial motion under Rule 24; or
(2) Which was raised or addressed at trial; or
(3) Which could have been but was not raised at trial, unless the ground for relief arises under Rule 32.1(b); or
(4) Which was raised or addressed on appeal or in any previous collateral proceeding; or
(5) Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 32.1(b).

The petitioner further argues that the assertion of procedural default defenses to allegedly meritorious claims necessitates an evidentiary hearing, but again, he fails to specify any factual basis for such an argument. Again, it also appears that the record provides a sufficient basis upon which to decide the issues in this case.

## II. MOTIONS FOR APPOINTMENT OF INVESTIGATOR AND EXPERT WITNESSES

The petitioner has requested that this court appoint an investigator and several expert witnesses to assist him in conjunction with this petition. He makes his request under §§ 848(q)(4)(B) and 848(q)(9) of the Anti-Drug Abuse Act of 1988.[12] Taken together, these provisions allow federal habeas courts to provide indigent habeas petitioners in capital cases with funds for all "reasonably necessary" investigative and expert services requested by such petitioners who challenge the constitutionality of their convictions and death sentences.[13] There is no definition of "reasonably necessary" in the statute, and little case law authority addresses these provisions. It appears, at least, that the petitioner has the burden of showing that the requested investigative and expert services are "reasonably necessary." The petitioner has not made such a showing.

The petitioner has requested funds for the retention of expert witnesses with specialized knowledge in the areas of psychiatry, law enforcement procedure and ballistics, toxicology and criminal procedure and legal competence in the State of

---

[12] 21 U.S.C. §§ 848(q)-(r).

[13] The pre-AEDPA version of this statute, under which these motions were filed, provides for the determination of whether such assistance is reasonably necessary in "ex parte proceedings," 21 U.S.C. § 848(q)(9), but the petitioner has filed his statutory request and supporting documents in open court and has not suggested the court proceed ex parte. The court's discussion of this request will accordingly appear in this opinion and not in a separate, sealed opinion.

14

Alabama, and an investigator. His request is supported by his counsel's affidavit, along with the attached resumes of Lou Reiter and C. Robert Showalter, M.D. (two prospective witnesses for the requested evidentiary hearing), the affidavit of James C. Beck, M.D., Ph.D., and several statements in the petitioners brief on the merits.

In his affidavit, counsel states merely that the petition raises issues related to the claim "that the police engaged in serious misconduct in interrogating [the petitioner] while he was intoxicated, and in giving [the petitioner] alcohol . . . as an inducement to [the petitioner] to sign a written confession." Counsel states that Reiter is willing to testify on police misconduct issues, specifically that "the conduct of the Tuscaloosa Police, both in interrogating [the petitioner] while he was in an intoxicated state, and then in providing [the petitioner] with alcohol, after he had declined to sign a confession, as an inducement to obtain [the petitioner's] signature on the confession, was unethical, improper, unprofessional, and inconsistent with professional police standards."

In his brief on the merits, the petitioner states that Reiter's testimony would show that the conduct of police was unprofessional and that the statement was involuntary. The petitioner claims that Reiter would have testified that

(1) Officer Marcum acted in contravention of standard police procedures when he gave [the petitioner] a bottle of whiskey which had been logged as evidence after having been confiscated from [the petitioner] during a search of his person.

(2) It was improper police conduct not to reconfirm [the petitioner's] testimony when he was sober because [the petitioner] told the police officers that he had been drinking and he smelled of alcohol. It is standard practice for police officers to reconfirm a statement made during interrogation by a suspect who had been drinking.

> (3)  It is standard police practice to call other health professionals in when a suspect who is being interrogated appears to be suffering from delirium tremens.
>
> (4)  Officer Marcum's failure to take these steps was clearly improper police conduct.
>
> (5)  Officer Marcum's use of the unopened bottle of whiskey, which, up to that point, was evidence in the case, was clearly improper and in violation of the police officer's duty to take precautions to safeguard and not tamper with evidence.

Petitioner's Brief on the Merits at 22-23.

Such expert testimony is not "reasonably necessary" to the petitioner's case. The court does not need an expert to explain that the conduct of police in allowing the petitioner to drink alcohol, especially alcohol confiscated as evidence, was improper. The court also realizes that police interrogation of a severely intoxicated person is questionable at best. No expert assistance is necessary as to these issues.

Testimony regarding police standards on reconfirming the statement of a suspect who has been drinking and on calling a health professional for a victim of delirium tremens is not necessary to resolve the issues in this case. The petitioner has cited no authority to the court that the failure to meet these standards, if indeed there was such a failure in this case, alone renders a statement constitutionally inadmissible. Police standards on interrogation and the taking of statements may (and hopefully do) exceed the minimum standards imposed by the Constitution. In any event, police standards should be measured by constitutional requirements, and not the other way around.

In his affidavit, petitioner's counsel states that Showalter is willing to testify on "issues relating to [the petitioner's] physical and mental states while being interrogated by

the Tuscaloosa Police, and the effect on [the petitioner] of the alcohol the police provided him." The petitioner states that Showalter would have testified that the statement "was not knowingly made because [the petitioner's] consumption of whiskey during the interrogation would have inebriated him to a significant level, such that [the petitioner's] signing the statement was neither knowing nor voluntary." Petitioner's Brief on the Merits at 23. The petitioner argues that such testimony would establish that the police acted unprofessionally and that his statement was involuntary. Petitioner's Brief on the Merits at 17. This does not establish that Showalter's testimony is "reasonably necessary" to the petitioner's case or to any specific claims in the petition. As explained above, expert testimony is not required on the issue of police misconduct. Also, the voluntariness of the petitioner's signature on the statement is irrelevant. The statement was admissible without a signature.[14]

Beck states in his affidavit that he has been retained by the petitioner to show the effect of alcohol on the petitioner during his interrogation. Beck states that the petitioner is a long-time habitual drinker and that, in the months between his release from prison and his subsequent arrest in this case, he drank enough to become "severely dependent or addicted." Beck states that Hubbard was under the influence of alcohol on the day of his arrest in this case, and that as he metabolized the alcohol, he experienced withdrawal. When someone experiences withdrawal, he says, their "metabolism begins to fail, followed

---

[14]See Wong Sun v. United States, 371 U.S. 471, 491, 83 S. Ct. 407, 419, 9 L. Ed. 2d 441 (1963) ("[t]he fact that the statement was unsigned . . . does not render it inadmissible; Wong Sun understood and adopted its substance, though he could not comprehend the English words."). See also Landsdown v. United States, 348 F.2d 405, 411 (5th Cir. 1965) ("the [defendant's] statement would have been admissible even if unsigned. [Citation omitted]. Therefore, the circumstances surrounding its execution did not render admission of the statement prejudicial error.")

17

by tremors, lack of motor control, hallucination and sometimes death." He states that the petitioner's "body and brain tissue need alcohol to continue to function." He goes on to say that

> a person with [the petitioner's] background and level of alcohol dependence was in a potentially life-threatening situation during his interrogation. [The petitioner] could have progressed to delirium tremens and death without a drink of alcohol, and he was denied a drink until he agreed to sign the statement. [The petitioner was in a biologically coercive position and state of agitation. It is my opinion that an alcoholic experiencing alcohol withdrawal, as [the petitioner] was, could not have weighed the risks and benefits associated with signing the statement and could not have voluntarily signed the statement.

Beck Affidavit at ¶ 9.[15]

This affidavit does not establish that Beck's assistance is "reasonably necessary" to the petitioner's case. Indeed, his opinion that the petitioner could not have voluntarily signed the statement is not even relevant, as the petitioner's signature was not necessary to the admission of his statement. There is already evidence in the record (among the petitioner's Bryce Hospital records) that the petitioner was a long-time drinker and an alcoholic at the time of his arrest. Thus, Beck's testimony is not necessary in that regard. Similarly, the court is aware, as are most adults in this society, of the phenomenon, cause and primary symptoms of delirium tremens. The court will be able to evaluate the petitioner's claims without Beck's assistance.

The petitioner has failed to support his request for expert assistance in the areas of ballistics or criminal procedure with specific information regarding why such experts are

---

[15] The court notes that some of the facts upon which Beck's affidavit is based are not in evidence, such as that the petitioner "was denied" a drink until he agreed to sign the statement. The record indicates that the petitioner had already given and agreed to sign the statement before he ever asked for a drink.

reasonably necessary to his case or to any of his particular claims. He likewise relates very little information regarding his need for an investigator, stating only that such an investigator "would interview all jurors, trial witnesses, and other witnesses who did not testify at [the petitioner's] trial, and would otherwise assist in the defense of this matter." Petitioner's Motion for Appointment of Investigator. There is no indication of the particular information needed or which claims such information is needed to support. Neither is there an indication why an investigator would be required to seek such information. The court is not satisfied that the assistance of an investigator is "reasonably necessary" to the petitioner's case.

Because the petitioner has not shown that funds for experts or an investigator are "reasonably necessary" to his case, and because the court has determined that it is not necessary to hold an evidentiary hearing in this case and that the issues may be decided upon the record, it is not necessary to appoint expert witnesses or an investigator. Accordingly, the court will deny the motions for the appointment of expert witnesses and an investigator in an order to be issued contemporaneously herewith.

Done, this ___1st___ of April, 1997.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE